**United States District Court**
**For the District of Maine**

**United States of America**

**v.**                                        **Case No. 1:23-cr-17-SDN-1**

**Oscarlin Peguero Ortiz**

### Motion to Suppress Statements and
### Derivative Evidence

### I.    Argument summary

Oscarlin Peguero Ortiz moves this Court to suppress all the statements he made during a police interrogation on July 17, 2020, after the execution of a search warrant at 887 River Road in Avon, Maine. Because Mr. Peguero Ortiz did not knowingly and voluntarily waive his *Miranda* rights, his statements may not be admitted as part of the government's case-in-chief. *Harris v. New York*, 401 U.S. 222, 224-26 (1971); *Miranda v. Arizona*, 384 U.S. 436 (1966).

### II.    Pertinent facts

Officers with the Franklin County Sheriff's Department obtained a warrant to search 887 River Road in Avon, Maine. Mr. Peguero Ortiz was inside the residence during the execution of that warrant, and he was immediately handcuffed and taken into custody. While Mr. Peguero

1

Ortiz was standing outside the residence, in handcuffs, a detective read him the *Miranda* warning.[1]  Importantly, for our purposes, the detective said this to Mr. Peguero Ortiz:

> Detective:    I'm going to read you *Miranda* warnings.  If you don't understand something, just let me know, okay?  **If you do understand it, and you agree, you just need to say "yes" if you do.**  Okay?

Then, after the enunciation of each right, the detective asked Mr. Peguero Ortiz to verbalize his understanding by saying: "Do you understand that?"  For example:

> Detective:    You have the absolute right to remain silent.  Do you understand that?

> Defendant:    Yes.

Telling a suspect that he must talk to the police by verbally acknowledging each right embodied in the *Miranda* warning is anathema to the suspect's right to remain silent. The government cannot satisfy its burden of proving that Mr. Peguero Ortiz knowingly and intelligently

---

[1]    This initial exchange is memorialized in an audio recording which was produced by the government in discovery and is identified by BATES number 476.  Mr. Peguero Ortiz will either tender a copy of this recording, or a transcript of the recording, to the Court in advance of a hearing on this motion, should one occur.

waived his right to remain silent or any of the other fundamental rights embodied in the *Miranda* advisal.

Mr. Peguero Ortiz's interrogator was not a rookie police officer forced to make split-second decisions in the field. He was a seasoned detective. As such, he should have known that simultaneously commanding a suspect to speak and telling the suspect he has a right to remain silent, is not legally permissible. Such a tactic violates the integrity of the investigation and ultimately undermines the accuracy of a criminal conviction.

### III. Argument

#### A. The legal framework

A defendant's challenge to the admission of statements made during custodial interrogation presents two separate questions: whether he received and validly waived his *Miranda* rights, and whether his statements themselves were voluntary. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000) (discussing the doctrinal difference).

The first question stems from *Miranda,* which announced a prophylactic requirement designed to safeguard a suspect's Fifth Amendment privilege against self-incrimination and secure a waiver of

those rights.  *Id.* at 432-35.  A defendant may waive his *Miranda* rights and agree to speak with the police as long as the waiver is "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and is made knowingly and intelligently, "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The second question concerns whether, in the totality of the circumstances, the defendant's statements to authorities were voluntary. Use at trial by the prosecution of a defendant's involuntary statements is a denial of due process.  *Mincey v. Arizona*, 437 U.S. 385, 398 (1978).  A confession is involuntary if the police obtain it through coercive means that overcome the defendant's free will.  *Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986).

The two inquiries are doctrinally distinct.  Coercive interrogation techniques may render a confession involuntary notwithstanding a valid *Miranda* waiver.  *Miller v. Fenton*, 474 U.S. 104, 116-17 (1985). Conversely, "unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from

4

evidence under *Miranda*.  *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985); *see also Dickerson*, 530 U.S. at 444 ("The disadvantage of the *Miranda* rule is that statements which may be by no means involuntary, made by a defendant who is aware of his 'rights,' may nonetheless be excluded and a guilty defendant go free as a result.").

Mr. Peguero Ortiz's argument focuses on the *Miranda* requirement. The burden is on the prosecution to prove a valid *Miranda* waiver by a preponderance of the evidence.  *Missouri v. Seibert*, 542 U.S. 600, 608 n. 1 (2004); *see also Burbine*, 475 U.S. at 421 (discussing the voluntary relinquishment of *Miranda* rights).  This is a "heavy" burden.  *Miranda*, 384 U.S. at 475; *see also North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("courts must presume that a defendant did not waive his rights" and "the prosecution's burden is great").

To determine the validity of a *Miranda* waiver, a court will examine the totality of the circumstances under which the defendant's statements were made.  *See e.g. Edwards v Arizona*, 451 U.S. 477, 482-83 (1981) (so stating).

## B.    Application

Advising a defendant that he has the right to remain silent achieves nothing if it is preceded by a law enforcement officer's command: "If you do understand [you right to remain silent, etc.], and you agree, you just need to say 'yes' if you do." Telling a suspect that he must talk and then telling him that he may remain silent is inconsistent at best. Worse, it conveys the impression that the *Miranda* warning is simply a formality, devoid of any meaning at all. *Cf. Edwards*, 451 U.S. at 479, 487 (concluding that the police violated *Miranda* where, *inter alia*, a guard told the defendant that he had to talk and took him to meet with detectives).

A suspect is under no obligation to verbally acknowledge his understanding (or lack thereof) of each of the rights embodied in the *Miranda* warning. Requiring a suspect to verbally respond to the *Miranda* warning is plainly inconsistent with the right *Miranda* aims to protect, *i.e.* a suspect's ability to remain silent and say nothing at all. A suspect may demonstrate his knowledge of the *Miranda* rights and demonstrate his willingness to invoke them, by remaining silent. In *Miranda* itself, the Court admonished:

6

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

*Miranda*, 384 U.S. at 473-74.

A suspect's silence in response to the warnings is perhaps the strongest indication that the suspect understands his right to remain silent and wishes to execute it. It goes without saying that a suspect cannot be made to speak in order to enjoy his right to stay silent.

The rule announced in *Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010), that a suspect must unambiguously invoke the right to silence does not, by some twist of logic, authorize the police to compel a defendant to speak his understanding each of the *Miranda* rights. The requirement of an unambiguous invocation of *Miranda* rights exists to benefit law enforcement officers by enabling them to "avoid difficulties of proof" at trial. *Id.* at 381-82 (quoting *Davis v. United States*, 512 U.S. 452, 458-59

(1994) (cleaned up)).[2]  It cannot be used as a cudgel against the defendant to deprive him of agency and force him to speak during an interrogation. Doing that is precisely what *Miranda* and its progeny aim to prevent.

Likewise, *Salinas v. Texas*, 570 U.S. 178 (2013) is of no help to the government.    *Salinas* reiterates that the privilege against self-incrimination "generally is not self-executing" and that a witness who desires its protections "must claim it," but *Salinas* also specifically exempts from that general rule defendants subject to custodial interrogation.  *Id.* at 181, 184.  Indeed, *Salinas* confirms *Miranda*'s admonition that "a suspect who is subjected to the inherently compelling pressures of an unwarned interrogation need not invoke the privilege. Due to the uniquely coercive nature of custodial interrogation, a suspect in custody cannot be said to have voluntarily foregone the privilege unless he fails to claim it after being suitably warned."  *Id.* at 184-85 (internal quotations omitted; cleaned up).

---

[2]    *Berghuis* contemplates a scenario where a suspect remains silent for a portion of the interrogation, and then *voluntarily* begins to answer questions.   The unambiguous-invocation rule has no utility where a suspect remains silent for a portion of the interview, then the police compel the suspect to speak, and he does.

In fact, the police are required to give *Miranda* warnings without regard to a suspect's legal acumen because, *inter alia,* "the warning will show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it."  *Miranda,* 384 U.S. at 468. Giving the warning and then forcing an individual to speak in response does nothing to instill confidence that law enforcement officials recognize the right to remain silent.  On a more fundamental level, how is a suspect supposed to reconcile the *Miranda* warning – you have a right to remain silent – with the immediate command to speak?  It beggars belief that a suspect might somehow deduce that he is required to speak in response to the *Miranda* warning, but he otherwise retains the right to stay quiet in response to any other question.

Without a doubt, Mr. Peguero Ortiz was subjected to custodial interrogation.  He was handcuffed; interrogated by at least two police officers (and many more officers were on the scene to execute the search warrant); and he was told repeatedly that he was going to jail.  The "inherently compelling pressures," *Miranda,* 384 U.S. at 467-68, of such a situation were exacerbated further by – not only the detective's distortion of the *Miranda* warning – but also Mr. Peguero Ortiz's limited

first-hand interaction with the police, and with his repeated statement to the detective that where he comes from (the Bronx), the police often behave poorly towards criminal suspects.

WHEREFORE, Mr. Peguero Ortiz respectfully requests that this Court suppress from use at trial and sentencing the statements he made to the police during the July 17, 2020 custodial interview.

Respectfully submitted,

*/s/ Jamesa J. Drake*

Service to AUSA via
CM/ECF

Jamesa J. Drake
Drake Law LLC
P.O. Box 56
Auburn, ME 04212
(207) 330-5105

10